UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| LUSHER SITE REMEDIATION GROUP,<br><br>  Plaintiff,<br><br>  v.<br><br>HMS ELKHART, LLC, et al.,<br><br>  Defendants. | Case No. 3:18-CV-506 |

## OPINION AND ORDER

Now before the Court is the Renewed Motion to Bar Contribution Claims brought by Defendants HMS Elkhart, LLC and Heavy Metal Scrap, Inc. (collectively "HMS"). (DE 283.) The motion is brought pursuant to a settlement reached between HMS and Plaintiff Lusher Site Remediation Group ("Lusher Group"). [1] The Court GRANTS the motion to bar contribution claims, finding that the Settlement Agreement is fair, reasonable, and consistent with the objectives of CERCLA.

**A.    Factual Background**

This is an action for cost recovery and contribution under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), 42 U.S.C. § 9601 et seq., as amended by the Superfund Amendments and Reauthorization Act of 1986, Pub.

---

[1] According to the Third Amended Complaint, the Group consists of the following entities: Anderson Products Inc.; B-D Industries, Inc.; Elkhart Plating Corp.; NFP Holdings, LLC; Gaska Tape Inc.; Holland Metal Fab, Inc.; and Walerko Tool and Engineering Corp.

L. No. 99-499, 100 Stat. 1613. The Lusher Group brought this action against many current and previous owners of the Lusher Street Groundwater Site ("site").[2]

The site consists of several properties owned by different defendants that has a groundwater plume contaminated with a variety of chemicals, including tetrachloroethene ("PCE") and trichloroethene ("TCE"), which were commonly used as industrial solvents. In 1987, the EPA conducted a removal action at the Lusher site to reduce any immediate threats to human health and the environment posed by the groundwater contamination. In 2005, the Indiana Department of Environmental Management (IDEM) discovered additional contamination at the site and eventually the site was included on EPA's high-priority cleanup site listing, the National Priorities List, in 2008. Due to the complexity of the groundwater contamination at the site, the EPA divided the site into distinct and separate phases using operable units ("OUs").

On March 29, 2016, the Court approved a consent decree, finalizing the interim remedy ("OU1") at the Lusher site, and it was entered into by the EPA, IDEM, and the Lusher Group.[3] This consent decree only applied to OU1 costs and the State of Indiana's past costs, but did not apply to costs at the site related to OU2 and other future costs. In an order issued on June 10, 2021, the Court explained that the Lusher Group could only bring claims for contribution arising out of or in connection with the 2016 Consent Decree against the two HMS defendants, who were included in the original complaint. (DE 279 at 8.) The order explained that the statute of limitations under CERCLA prohibited the Lusher Group from bringing contribution claims arising from the 2016 Consent Decree against any defendants added after the original complaint.

---

[2] Sturgis Iron & Metal Co., Inc.; R 11, LLC; Godfrey Conveyor Co., Inc.; Patrick Industries, Inc.; Elkhart Industries, Inc.; HMS Elkhart, LLC; Heavy Metal Scrap, Inc.; Atlas Die LLC; R Concepts Industries, Inc.; R Concepts, Inc.; IMC, Inc.; Elkhart Metals Corp.; Industrial Plant Service, Inc.; the 1610 Corporation; and Sturgis Iron & Metal of Indiana (collectively, the "Defendants").

[3] The Court refers to the March 29, 2016, Consent Decree as the "2016 Consent Decree."

(*Id.*) However, as to claims unrelated to the 2016 Consent Decree, the Lusher Group was allowed to proceed against Defendants added in later amended complaints with its § 107 claims under CERCLA. (*Id.* at 9)

The Court's June 10th order also addressed HMS's first motion to bar contribution claims. (DE 274.) HMS brought that motion pursuant to a settlement with the Lusher Group (*Id.* at 2), but HMS did not submit a copy of the settlement. They asserted, however, that the settlement permitted them to file a motion to bar any non-parties to the settlement from asserting contribution claims arising out of or in connection with the 2016 Consent Decree. (*Id.*) Certain "Secondary Defendants" then filed an objection to HMS's first motion to bar contribution claims.[4] (DE 276.) The Secondary Defendants argued that because HMS did not attach a copy of the settlement agreement, the Court could not assess the fairness of that settlement agreement. (DE 276 at 3.) This assessment was critical "because any future recovery that the plaintiff Lusher Site Remediation Group might obtain from non-settling entities will very likely be reduced only by the amount of money paid in the settlement and not by the HMS Defendants' proportionate share of the Superfund site remediation cost." (*Id.*) Ultimately, the Court denied HMS's first motion to bar contribution claims without prejudice, allowing leave to refile once certain crossclaims brought by HMS were adjudicated. (DE 279 at 9.)

HMS then brought a Renewed Motion to Bar Contribution claims. (DE 283.) In their motion, HMS explained that they had voluntarily dismissed their crossclaims in two separate filings on October 6, 2020 (DE 261), and on October 8, 2020 (DE 262). Therefore, with the crossclaims resolved, they renewed their request to bar contribution claims against any non-party

---

[4] The "Secondary Defendants" who objected were Atlas Die LLC, Elkhart Industries, Inc., Patrick Industries, Inc., and R. Concepts Industries, Inc.

to the settlement for any claims arising out of or in connection with the 2016 Consent Decree. This time, though, in response to the objection from the Secondary Defendants, HMS attached a copy of the Settlement Agreement. (DE 283 at 3; DE 283-1.)

First, the settlement provides that HMS will deliver $350,000 to counsel for the Lusher Group within 15 days of full execution of the agreement. (DE 283-1 at 5.) In exchange for this amount, HMS is discharged from all claims arising out of or in connection with the 2016 Consent Decree and Consent Decree costs. (*Id.*) However, the settlement explicitly reserves the parties' right to assert claims which do not arise out of the 2016 Consent Decree and Consent Decree costs. The settlement further agrees that HMS is permitted to file with the Court a motion seeking to bar contribution claims, and stipulates that the Lusher Group would not object to that motion, so long as the language was reasonable. (*Id.* at 6.) The parties also agree that within 5 days of the Court's order on HMS's motion seeking a contribution bar, they will jointly file a motion to dismiss with prejudice all claims arising out of or in connection with the 2016 Consent Decree and Consent Decree costs. (*Id.*)

No defendant has objected to HMS's motion. The Court notes, however, that multiple other defendants submitted responses expressing their belief that HMS is only seeking protection from contribution claims related to the 2016 Consent Decree. (DE 285; DE 286.) The Court agrees that HMS's motion to bar contribution claims is limited to those claims arising out of or in connection with the 2016 Consent Decree, and will proceed with its determination.

**B.   Standard of Review**

CERCLA provides that "[a] person who has resolved its liability to the United States or a state in an administratively or judicially approved settlement shall not be liable for claims for contribution regarding matters expressed in the settlement." 42 U.S.C. § 9613(f)(2). Courts have

interpreted this language expansively, finding that "private settling parties are [also] protected from claims for contribution which may be brought by other PRP's." *United States v. SCA Servs. of Indiana, Inc.*, 827 F. Supp. 526, 532 (N.D. Ind. 1993) (citations omitted). Such bars on contribution are appropriate because they further the "strong federal interest in promoting settlement," which "is especially pronounced in complex matters such as CERCLA claims, where the amount of evidence to be gathered for assessing liability is voluminous." *Allied Corp. v. ACME Solvent Reclaiming, Inc.*, 771 F. Supp. 219, 222 (N.D. Ill. 1990) (citing *Metropolitan Housing Dev. Corp. v. Arlington Heights*, 616 F.2d 1006, 1013 (7th Cir. 1980)).

Even though HMS does not explicitly request approval of their settlement, Courts must approve of a private settlement prior to granting a bar on contribution claims. *See SCA Servs. of Indiana, Inc.*, 827 F. Supp. at 532 (approving settlement prior to granting bar on contribution claims); *Evansville Greenway & Remediation Tr. v. S. Ind. Gas & Elec. Co.*, No. 3:07-CV-66, 2010 WL 3781565, at *3 (S.D. Ind. Sept. 20, 2010) (same); *Gary Int'l Airport Authority v. Honeywell Int'l Inc.*, No. 2:17-CV-95, 2021 WL 5094846, at *1 (N.D. Ind. Oct. 4, 2021) (same); *Cooper Drum Cooperating Parties Grp. v. Am. Polymers Corp.*, No. CV1903007, 2020 WL 2504331, at *3 (C.D. Cal. May 13, 2020) ("[F]ederal courts may approve settlements and enter bar orders that discharge all claims of contribution by non-settling defendants.").

When determining whether to approve a settlement, the Court considers if the settlement is (1) fair and adequate; (2) reasonable; and (3) faithful to the objectives of CERCLA. *Evansville Greenway & Remediation Tr.*, No. 3:07-CV-66, 2010 WL 3781565, at *1 (footnote in original). "The approval of settlements in the CERCLA context is 'committed to the trial court's informed discretion.'" *Id.* (quoting *SCA Servs. of Indiana, Inc.*, 827 F. Supp. at 532).

**C.  Discussion**

### *(1) Fairness*

The Court finds that the settlement was both procedurally and substantively fair. The settlement was procedurally fair because the parties were each represented by counsel and reached the agreement after a lengthy mediation process. (DE 283 at 3.) Other courts have found that use of a private mediator helps to demonstrate procedural fairness. *See Evansville Greenway & Remediation Tr.*, No. 3:07-CV-66, 2010 WL 3781565, at *1 (finding that the parties being "aided by a local mediator" helped support a finding of procedural fairness).

Additionally, the Court believes that the terms of the settlement are substantively fair. One issue that can often arise with these types of settlements between a private party seeking contribution and a defendant is the impact on non-settling parties. This is because a claim for contribution under 113(f)(1) of CERCLA necessarily requires allocation, where "the costs [a plaintiff has incurred after entering a consent decree] should be apportioned equitably amongst itself and others responsible." *Akzo Coatings, Inc. v. Aigner Corp.*, 30 F.3d 761, 764 (7th Cir. 1994) (citations omitted). Therefore, when one party settles, and is allocated a certain amount of liability, other parties' liability can be impacted depending on the method of apportionment a Court uses.

The Seventh Circuit uses the Uniform Contribution Among Tortfeasors Act's pro tanto approach to reduce the share of non-settling parties' liability following Court approval of a settlement. Under this approach, when a private litigant bringing a claim under CERCLA has settled with a defendant, the UCATA "reduces liability [of another party's share] by the dollar amount of" the settlement. *Akzo Nobel Coatings, Inc. v. Aigner Corp.*, 197 F.3d 302, 307 (7th Cir. 1999). Other Circuits, such as the First and Ninth, do not require the pro tanto approach to be used for private settlements, instead leaving it to the discretion of the district court to

determine how to equitably reduce liability in lieu of a settlement. *See Am. Cyanamid Co. v. Capuano*, 381 F.3d 6, 21 (1st Cir. 2004); *AmeriPride Servs. Inc. v. Texas E. Overseas Inc.*, 782 F.3d 474, 487 (9th Cir. 2015) (criticizing the UCATA approach because "[i]f the [party settling] settles for less than its proportionate share of the injury, the [non-settlers] will end up paying more than their proportionate share").

Secondary Defendants filed their initial objection to HMS's first motion to bar contribution claims because, without assessing the fairness of the settlement, HMS's liability in the settlement might be calculated too low, which would affect the other defendants' ultimate liability. They correctly observed that "assessing the fairness of the settlement is important because any future recovery that the plaintiff Lusher Site Remediation Group might obtain from non-settling entities will very likely be reduced only by the amount of money paid in the settlement and *not* by the HMS Defendants' proportionate share of the Superfund site remediation costs." (DE 276 at 3.) The Court agrees that the pro tanto reduction approach adopted by the Seventh Circuit typically makes the initial assessment of whether a settlement is fair an especially important inquiry.

However, in this circumstance, it is clear that the other defendants will not be prejudiced by approval of the settlement. In its June 10th order, this Court found that the Lusher Group's claims arising out of the 2016 Consent Decree could *only* be brought against HMS because the statute of limitations had run as to the other defendants. Since liability for the Lusher Group's claims arising from the 2016 Consent Decree is now limited to HMS, and the settlement only pertains to the 2016 Consent Decree, no other parties' liability would be affected by approval of the settlement. This also explains why no party objected to HMS's instant motion: without any other party outside of HMS potentially liable for the Lusher Group's claims related to the 2016

Consent Decree, no other party will need to seek contribution from HMS as to those claims. Meaning, no other party will have to seek contribution from HMS after paying more than their proportionate share because no other party is going to have to contribute *anything* for the Lusher Group's 2016 Consent Decree claims, regardless of what HMS pays.

Because the settlement occurred after a lengthy, arms-length negotiation between HMS and the Lusher Group, and because no other parties' liability will be affected by approving the settlement, the Court believes that the settlement is fair.

### *(2)    Reasonableness*

The Court also finds that the settlement is reasonable. In evaluating reasonableness, the Court considers the foreseeable litigation risks and transaction costs associated with litigation. *Evansville Greenway & Remediation Tr.*, No. 3:07-CV-66, 2010 WL 3781565, at *3. The Court also considers the "likely efficaciousness [of the settlement] as a vehicle for cleansing the environment; the extent to which it satisfactorily compensates the public for actual and anticipated costs of remedial and response measures; and the relative strength of the parties' litigating positions." *United States v. Fort James Operating Co.*, 313 F. Supp. 2d 902, 910 (E.D. Wis. 2004) (citing *United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 89 (1st Cir. 1990)).

Considering these factors, the Court believes that the settlement is reasonable and in the public interest. The settlement provides for more timely reimbursement of remediation costs, which assists the public by apportioning harm to the responsible party. *Evansville Greenway & Remediation Tr.*, No. 3:07-CV-66, 2010 WL 3781565, at *3 ("The settlement is clearly in the public interest because the funds the Settling Parties have agreed to pay will be material in helping to effectuate a more timely restoration of the River Yard and/or reimbursement for remediation costs at the Main Yard and appear to be proportional to the harm allegedly caused

by the parties."); *see also SCA Servs. of Indiana, Inc.*, 827 F. Supp. at 533 ("These settlements are clearly in the public interest as they achieve early resolution of the apportionment of the remediation costs as between the settling parties, and as they will foster a more timely restoration of the site.")

Additionally, the settlement will save the parties substantial transaction costs. Rather than expending substantial funds by going to trial, the parties have saved costs by settling in a timely manner. In the CERCLA context, this type of efficiency is highly encouraged. *See SCA Servs. of Indiana, Inc.*, 827 F. Supp. at 533 ("The proposed settlement is in accordance with CERCLA law, and is likewise consistent with CERCLA's purpose of remediating hazardous waste sites as efficiently as practical.").

### (3)     *Purposes of CERCLA*

Lastly, the Court believes that the settlement is in line with the purposes of CERCLA. Congress enacted CERCLA for two purposes: (1) to "establish a comprehensive response and financing mechanism to abate and control the vast problems associated with abandoned and inactive hazardous waste disposal sites" and (2) "to shift the costs of cleanup to the parties responsible for the contamination." *Metro. Water Reclamation Dist. of Greater Chicago v. N. Am. Galvanizing & Coatings, Inc.*, 473 F.3d 824, 827 (7th Cir. 2007) (citing *Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 483 (1996)).

The Court believes that the settlement furthers these purposes. As discussed above, the settlement reduces litigation expenses and transaction costs. This helps to preserve funds to be used in a manner that furthers the goals of CERCLA. *See Evansville Greenway & Remediation Tr.*, No. 3:07-CV-66, 2010 WL 3781565, at *4 ("The Settlement Agreement has significantly reduced excessive litigation expenses and transaction costs by eliminating continued litigation

between the Settling Parties, thereby preserving those funds to be used in a manner that furthers the goals of CERCLA.") Additionally, the amount of funds provided by HMS in the settlement will help reapportion liability from the Lusher Group to include another potentially responsible party, which serves one of the main purposes of CERCLA.

### IV.   Conclusion

For the reasons explained above, the Court **APPROVES** the settlement agreement, as it is fair, reasonable, and consistent with the objectives of CERCLA. (DE 283-1.) Furthermore, the Court **GRANTS** HMS Elkhart, LLC and Heavy Metal Scrap, Inc.'s Renewed Motion to Bar Contribution Claims. (DE 283.)

Accordingly, all contribution claims against HMS for any claims arising out of or in connection with the Consent Decree between Lusher Group, the Administrator of the United States Environmental Protection Agency and the State of Indiana, on behalf of the Indiana Department of Environmental Management, entered on March 29, 2016, are hereafter barred.[5]

SO ORDERED.

---

[5] The Court does not believe that due process concerns arise by granting a bar on contribution claims in this particular case. Some Courts have previously granted broad bars on contribution against *any* claims, even as to non-parties. *See Gary Int'l Airport Authority v. Honeywell Int'l Inc.*, No. 2:17-CV-95, 2021 WL 5094846, at *2 (N.D. Ind. Oct. 4, 2021) ("The Court ORDERS that claims by any person, agency, or entity against Defendant Honeywell International, Inc., Defendant UOP LLC, or any of their respective direct or indirect parents, subsidiaries, affiliates, directors, officers, or representatives for contribution regarding matters addressed in the settlement are BARRED."). Other Courts have only "imposed or enforced a CERCLA contribution bar in a private-party settlement . . . where the persons subject to the bar were either parties to the action, PRPs who were involved in or aware of settlement discussions, or non-parties who otherwise had at least constructive notice that their contribution claims stood to be extinguished." *City of Emeryville v. Robinson*, 621 F.3d 1251, 1265 (9th Cir. 2010) (listing cases in support of limiting contribution bars only to parties or those who have had adequate notice). However, because the statute of limitations has run as to contribution claims arising from the 2016 Consent Decree other than the claims brought against HMS, and the contribution bar requested by HMS only pertains to contribution claims arising from the 2016 Consent Decree, granting the request will not infringe on the due process of others who are not parties to this action. Therefore, the Court does not address due process in any further depth except to note that in other cases, where the bar on contribution could affect other non-parties' claims, the Court's analysis might be different.

ENTERED: November 16, 2021

/s/ JON E. DEGUILIO
Chief Judge
United States District Court