UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| LUSHER SITE REMEDIATION GROUP,<br><br>    Plaintiff,<br><br>    v.<br><br>STURGIS IRON & METAL OF INDIANA, et al.<br><br>    Defendants. | Case No. 3:18-CV-506 JD |

**OPINION AND ORDER**

Plaintiff Lusher Site Remediation Group brought an action for cost recovery and contribution under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), 42 U.S.C. § 9601 et seq., as amended by the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499, 100 Stat. 1613. The Lusher Group sued many current and previous owners of the Lusher Street Groundwater Site. At this point, the only defendants remaining in the case are Atlas Die LLC, Elkhart Industries Inc., Patrick Industries Inc., R Concepts Industries Inc d/b/a RC Industries, and Godfrey Conveyor Co. ("Secondary Defendants").

Plaintiff reached a settlement with ten non-party insurance companies[1] and is now seeking an order from the Court barring any contribution claims related to them. The Secondary Defendants object to the motion on the grounds that the Court has no jurisdiction over the non-party insurers and that Plaintiff has not shown that the agreement is fair, adequate, or reasonable

---

[1] National Fire Insurance Company of Hartford as successor to Transcontinental Insurance Co.; Transportation Insurance Co.; Citizens Insurance Company of America; Travelers Indemnity Co. as successor to Gulf Insurance Co.; Employers Insurance Co. of Wausau; ACE Property & Casualty Insurance Co.; St. Paul Fire and Marine Insurance Co.; Everest National Insurance Co.; Amerisure Mutual Insurance Co.; and Evanston Insurance Co.

to justify barring contribution claims. The Court agrees with the Secondary Defendants and will deny Plaintiff's motion.

**A. Background**

The Lusher Street Groundwater Site consists of several properties owned by different defendants that has a groundwater plume contaminated with various chemicals, including tetrachloroethene and trichloroethene, which were common as industrial solvents. In 1987, the EPA conducted a removal action at the Lusher site to reduce any immediate threats to human health and the environment posed by the groundwater contamination. In 2005, the Indiana Department of Environmental Management (IDEM) discovered additional contamination at the site and eventually the site was included on EPA's high-priority cleanup site listing, the National Priorities List, in 2008. Because of the complexity of the groundwater contamination at the site, the EPA divided the site into distinct and separate phases using operable units ("OUs").

On March 29, 2016, the Court approved a consent decree, finalizing the interim remedy ("OU1") at the Lusher site, and it was entered into by the EPA, IDEM, and Plaintiff Lusher Group. This consent decree requires Lusher Group to perform certain remedial actions at the Site. The consent decree only applied to OU1 costs and the State of Indiana's past costs, but did not apply to costs at the site related to OU2 and other future costs.

Plaintiff's Third Amended Complaint (DE 209)—the operating complaint—asserted six causes of action against sixteen defendants. Count I is for cost recovery under Section 107 of the federal Superfund statute ("CERCLA"). Count II is for contribution under CERCLA Section 113(f). Counts III through VI are Indiana state-law claims. While the non-party insurers were named as defendants in the original complaint, Plaintiff dismissed them when seeking to amend

the complaint on January 14, 2019 (DE 92). As a result, these insurers were not named as defendants in either the First Amended Complaint (DE 94), the Second Amended Complaint (DE 106), or the operative Third Amended Complaint (DE 209).

In August 2020, the Court dismissed most of Plaintiff's claims. (*See* DE 252.) The Court dismissed Counts I and III in their entirety, dismissed Count II except as to Defendants HMS Elkhart LLC and Heavy Metal Scrap Inc. (collectively "HMS Defendants"), declined to exercise jurisdiction over Counts IV through VI, and held that defendant Sturgis Iron & Metal Company, Inc. ("Sturgis") lacks capacity to sue or be sued. (*See* DE 252 at 25.)

In June 2021, the Court partly revised its August 2020 dismissal order. (*See* DE 279.) The Court distinguished between "Consent Decree costs" and "Non-Consent Decree costs," explaining that "the procedural posture of each category of costs is different." (DE 279 at 5–6.) For Consent Decree costs, the Court reiterated that Plaintiff is limited to a CERCLA contribution claim and that Plaintiff missed the deadline for filing such a claim. (*Id*. at 5–6, 14–15.) But for Non-Consent Decree costs, the Court held that Plaintiff could pursue claims under CERCLA Section 107 and Indiana's Environmental Legal Action statute. (*Id*. at 9–12, 14–15.) Thus, the Court reinstated Counts I and III of the Third Amended Complaint, but solely as to Non-Consent Decree costs. (*Id*. at 17.) The Court left its other August 2020 rulings in place.

Subsequently, Plaintiff reached a settlement with the HMS Defendants, and the Court granted the HMS Defendants' unopposed motion to dismiss. (*See* DE 307.) The Court also approved a claims bar for the HMS Defendants, but only as to Consent Decree costs. (*See* DE 302.) The Court emphasized that there was no risk of prejudice from that narrow bar because no other entity could be held liable for the Consent Decree costs. (*Id*. at 7–8.) The Court explained that because the statute of limitations had run on Plaintiff's claims for Consent Decree costs, "no

other party is going to have to contribute anything for the Lusher Group's 2016 Consent Decree claims, regardless of what HMS pays." (*Id*. at 8.)

Plaintiff next reached a settlement agreement with the non-party insurers, who allegedly sold insurance policies to Defendant Sturgis or its affiliates. (DE 325 at 1.) The settlement arose from a disagreement about whether the insurers "have any coverage obligations to the Sturgis Entities or the Lusher Group Entities under any [Sturgis-related] Policies." (Settlement Agreement, DE 325-1 at 3.) The agreement was reached through months-long negotiation with each side compromising to arrive at a mutually acceptable, arm's-length resolution that resolved all claims between them as it relates to the issues in this lawsuit. Neither Sturgis nor other defendants are signatories to the settlement agreement.

The agreement specifies that Plaintiff must file with the Court a motion seeking a bar on contribution claims by any third-party against any of the Sturgis Entities or non-party insurers arising out of or in any way related to released claims. Under the settlement agreement, the non-party insurers are required to pay Plaintiff an aggregate sum of $500,000 within thirty days of Plaintiff filing the motion. (DE 325-1 at 8 § 3.01.)

**(B) Standard of Review**

CERCLA provides two provisions, Sections 107 and 113, by which private parties may recover expenses associated with cleaning up contaminated sites. 42 U.S.C. §§ 9607(a), 9613(f). Section 107(a) permits cost recovery by a private party that has incurred cleanup costs by itself, whereas Section 113(f) authorizes a contribution action to other potentially responsible parties ("PRPs") "with common liability stemming from an action instituted under § 106 or § 107(a)." *United States v. Atl. Rsch. Corp.*, 551 U.S. 128, 139 (2007). These two provisions provide clearly

distinct remedies "for a right to cost recovery in certain circumstances, § 107(a), and separate rights to contribution in other circumstances, §§ 113(f)(1), 113(f)(3)(B)." *Cooper Indus., Inc. v. Aviall Servs., Inc.,* 543 U.S. 157, 163 (2004). The remedies provided "in §§ 107(a) and 113(f) complement each other by providing causes of action to persons in different procedural circumstances." *Atl. Research Corp.*, 551 U.S. at 139 (citing *Consol. Edison Co. of New York v. UGI Utilities, Inc.*, 423 F.3d 90, 99 (2d Cir. 2005) (quotation omitted)).

CERCLA provides that "[a] person who has resolved its liability to the United States or a state in an administratively or judicially approved settlement shall not be liable for claims for contribution regarding matters expressed in the settlement." 42 U.S.C. § 9613(f)(2). Courts have interpreted this language expansively, finding that "private settling parties are [also] protected from claims for contribution which may be brought by other PRP's." *United States v. SCA Servs. of Indiana, Inc.*, 827 F. Supp. 526, 532 (N.D. Ind. 1993) (citations omitted). Such bars on contribution are appropriate because they further the "strong federal interest in promoting settlement," which "is especially pronounced in complex matters such as CERCLA claims, where the amount of evidence to be gathered for assessing liability is voluminous." *Allied Corp. v. ACME Solvent Reclaiming, Inc.*, 771 F. Supp. 219, 222 (N.D. Ill. 1990) (citing *Metro. Hous. Dev. Corp. v. Arlington Heights*, 616 F.2d 1006, 1013 (7th Cir. 1980)).

Courts must approve of a private settlement prior to granting a bar on contribution claims. *See SCA Servs. of Indiana, Inc.*, 827 F. Supp. at 532 (approving settlement prior to granting bar on contribution claims); *Evansville Greenway & Remediation Tr. v. S. Ind. Gas & Elec. Co.*, No. 3:07-CV-66, 2010 WL 3781565, at *3 (S.D. Ind. Sept. 20, 2010) (same); *Gary Int'l Airport Authority v. Honeywell Int'l Inc.*, No. 2:17-CV-95, 2021 WL 5094846, at *1 (N.D. Ind. Oct. 4, 2021) (same); *Cooper Drum Cooperating Parties Grp. v. Am. Polymers Corp.*, No.

5

CV1903007, 2020 WL 2504331, at *3 (C.D. Cal. May 13, 2020) ("[F]ederal courts may approve settlements and enter bar orders that discharge all claims of contribution by non-settling defendants.").

When determining whether to approve a settlement, the Court considers if the settlement is (1) fair and adequate; (2) reasonable; and (3) faithful to the objectives of CERCLA. *Evansville Greenway & Remediation Tr.*, No. 3:07-CV-66, 2010 WL 3781565, at *1 (footnote in original). "The approval of settlements in the CERCLA context is 'committed to the trial court's informed discretion.'" *Id.* (quoting *SCA Servs. of Indiana, Inc.*, 827 F. Supp. at 532).

Even more to the point, the Court must have jurisdiction to approve a settlement agreement. "[A] dispute over the interpretation of the settlement agreement is a legal matter distinct from the underlying litigation." *Neuberg v. Michael Reese Hosp. Found.*, 123 F.3d 951, 955-956 (7th Cir. 1997) (citing *Nat'l Presto Indus., Inc. v. Dazey Corp.*, 107 F.3d 1576, 1583 (Fed. Cir. 1997) (district court retains no inherent authority to enforce or interpret settlement contract); and *Lucille v. City of Chicago*, 31 F.3d 546, 548-49 (7th Cir. 1994) (federal court will enforce or retain jurisdiction over settlement agreement only to extent that judgment expressly or implicitly incorporates such terms)). "Courts do not automatically have supplemental jurisdiction over any [settlement agreement]." *Hill v. Baxter Healthcare Corp.*, 405 F.3d at 576 (citing *Kokkonen v. Guardian Life Ins.*, 114 S. Ct. 1673, 1676–77). "[T]he Supreme Court held that 'enforcement of [a] settlement agreement is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis of jurisdiction.' Accordingly, for a federal court to enforce a settlement agreement between parties to a federal action, the dispute must fall within either the court's ancillary jurisdiction or its original subject matter jurisdiction." *Nat'l Presto Indus.*, 1994 U.S. Dist. LEXIS 17551, *5–6 (quoting *In Kokkonen*, 114 S. Ct. at 1675–76

(1994)). The party invoking federal jurisdiction bears the burden of proving jurisdiction. *See Meridian Sec. Ins. v. Sadowski*, 441 F.3d 536, 540-41 (7th Cir. 2006).

**(C) Discussion**

    **(1)** *Jurisdiction*

The Secondary Defendants object to Plaintiff's motion to bar contribution claims arguing that the Court has no jurisdiction to approve Plaintiff's settlement agreement with the non-party insurers and issue an order protecting their interests. Plaintiff counters this argument by insisting that the Court has inherent authority to act because the non-party insurers were named as defendants in the original complaint. Plaintiff also argues that the insurers are the only source for recovery for the Sturgis Entities' alleged environmental liabilities and Sturgis is a defendant here. Plaintiff maintains that barring contribution claims even against non-parties is supported by policy considerations for remedying the environmental pollution. (Pl. Rep. Br., DE 340 at 2–3.)

The Court finds that Plaintiff has failed its burden to show that the Court has jurisdiction over its settlement agreement with the non-party insurers. Although the non-party insurers were named in the original complaint, the Court has had no personal jurisdiction over them since Plaintiff dropped them from the case when amending the complaint. (DE 94.) Plaintiff removed the insurers from the case without any preconditions. In fact, in its motion to amend the complaint, Plaintiff recognized that the Court had no jurisdiction over the insurers and attached no stipulations to their being dropped from the case. (Pl.'s Mot. Leave Amend Compl., DE 92 ¶ 4.) Instead, Plaintiff stated that it had filed a complaint against the insurers in the Marion County Commercial Court and would continue this case "against Sturgis and HMS only." (*Id*. ¶¶ 5, 7). Consequently, the Court granted leave to Plaintiff to amend the complaint with no suggestion

that it was retaining jurisdiction over any aspect of Plaintiff's claims against the dismissed insurers. To be sure, there was no settlement agreement at that time so as to give even a semblance of the Court's continuous jurisdiction over the insurers. *See Lucille*, 31 F.3d at 548–49 (the Court may enforce or retain jurisdiction over settlement agreement only to extent that judgment expressly or implicitly incorporates such terms). Plaintiff entered into the settlement agreement with the insurers more than three years later. As a result, Plaintiff's request to approve the agreement and to issue an order barring contribution claims is an invitation for the Court to exercise authority that it does not have: there is no inherent power to assert jurisdiction where none exists. *See Healy v. Metro. Pier & Exposition Auth.*, 804 F.3d 836, 845 (7th Cir. 2015) ("We cannot create jurisdiction where we have none." (citing *Evergreen Square of Cudahy v. Wis. Hous. & Econ. Dev. Auth.*, 776 F.3d 463, 468 (7th Cir. 2015) (noting that "federal courts possess only that power authorized by Constitution and statute" and that considerations of judicial economy do not alone create jurisdiction) (citations omitted)). To put it differently, there's no case or controversy before the Court involving Plaintiff and the insurers. The insurers aren't parties in this case and any claims that Plaintiff may have had against them have been settled and payments made. Without any actual case or controversy between the Plaintiff and the insurers, the Court lacks subject matter jurisdiction over the Plaintiff's settlement and must deny the Plaintiff's motion. *See Sweeney v. Raoul*, 990 F.3d 555, 557 (7th Cir. 2021) ("Distilled to its essence, U.S. Const. art. III's case or controversy requirement limits federal courts to resolving concrete disputes between adverse parties. Put another way, Article III prevents federal courts from answering legal questions, however important, before those questions have ripened into actual controversies between someone who has experienced (or imminently faces) an injury and another whose action or inaction caused (or risks causing) that injury.").

In support of its motion, Plaintiff cites various cases but none of them apply. For example, *Zidell Marine Corp. v. Beneficial Fire & Cas. Ins.*, No. C03 5131RBL, 2004 WL 7308662, at *1 (W.D. Wash. May 24, 2004), stands for the proposition that, in multi-party litigation, the courts "have the inherent authority to enter a claims bar order, provided that the proposed settlement is reasonable and that the order protects the non-settling defendants." *Id*. at *2. But this point of law is uncontroverted, so *Zidell* adds little value to Plaintiff's stock. Worse yet, *Zidell* actually undermines Plaintiff's claim that the court can bar contribution claims against non-parties. In *Zidell*, four insurance companies settled with the plaintiff, but one of those companies, Maine Bonding, was not a defendant in the litigation. *Id*. at *1 & n.1. The court granted a contribution bar for the three settling defendants, but not for non-party Maine Bonding. *Id*. at *4. If Plaintiff were correct about the scope of the Court's authority in CERCLA cases over the non-parties, *Zidell*'s judgment would have included Main Bonding.

Likewise, in *City of New York v. Exxon Corp.*, 697 F. Supp. 677 (S.D.N.Y. 1988), the court approved a settlement agreement but refused to approve a judgment that incorporated a consent decree with the State of New York, a non-party. The court explained that, since the "State has not commenced a separate action under CERCLA nor has it sought to intervene in this one," the court was "constrained to dispose of only those claims which exist between the parties before it." *Id*. at 688.

Next, Plaintiff likens this case to *In re Airadigm Communications, Inc.*, 519 F.3d 640 (7th Cir. 2008), where, among other things, the Court of Appeals for the Seventh Circuit found in a matter of first impression that bankruptcy courts may "release third parties from liability to participating creditors if the release is 'appropriate' and not inconsistent with any provision of the bankruptcy code." *Id*. 519 F.3d at 657. The court recognized that Congress gave bankruptcy

9

courts "residual authority" "to effect any 'necessary or appropriate' order to carry out the provisions of the bankruptcy code," and the release did not "affect matters beyond the jurisdiction of the bankruptcy court[.]" *Id*. But Plaintiff's comparison of this case to *In re Airadigm* is misplaced. Here, the motion does not arise from a bankruptcy proceeding, nor has Plaintiff pointed to any statutory authority that would allow the Court to subject non-parties to its jurisdiction.

Finally, none of the other cases cited by Plaintiff help its cause as they simply recognize that courts may bar contribution claims, but none of them involve entities not before the court. And insofar as Plaintiff seeks to apply the bankruptcy principles to this case, it has failed to show that this case is similar enough to the cases involving bankruptcies. The simple fact remains that Plaintiff has not pointed to any case, from any jurisdiction, in which a court granted a motion like the one filed here. Accordingly, the Court finds that it lacks jurisdiction to issue an order approving settlement and barring contribution claims against the non-party insurers.

### (2) *Fairness, Adequacy, and Reasonableness*

But even if the Court had jurisdiction, it would still deny Plaintiff's motion because it has not shown that the settlement agreement is substantively fair, adequate, or reasonable. This case involves Consent Decree costs and Non-Consent Decree costs, but the case has barely begun with respect to Non-Consent Decree costs. The case has been stayed with respect to the Plaintiff's claims for Non-Consent Decree costs since September 2021, and the Plaintiff recently agreed to dismiss those claims without prejudice because so little is known about what the costs are, what they may become, and who may be liable for them. Furthermore, although the Plaintiff's settlement calls for the insurers to make a $500,000 payment, the settlement does not

explain how much of that payment (if any) applies to Non-Consent Decree costs. Plaintiff has not said what costs are covered by the $500,000 or what costs may exist in the future so as to give the Court some context concerning the amount of money involved and the corresponding liabilities in question. Given the dearth of information, the Court cannot determine the effect the agreement would have on non-settling parties. Yet a claim for contribution under 113(f)(1) of CERCLA necessarily requires allocation, where "the costs [a plaintiff has incurred after entering a consent decree] should be apportioned equitably amongst itself and others responsible." *Akzo Coatings, Inc. v. Aigner Corp.*, 30 F.3d 761, 764 (7th Cir. 1994) (citations omitted). Therefore, when one party settles, and is allocated some liability, another parties' liability can be impacted depending on the method of apportionment a court uses.

In addition, to find the agreement reasonable, the Court must consider the foreseeable litigation risks and transaction costs associated with litigation. *Evansville Greenway & Remediation Tr.*, No. 3:07-CV-66, 2010 WL 3781565, at *3. The Court must also determine the "likely efficaciousness [of the settlement] as a vehicle for cleansing the environment; the extent to which it satisfactorily compensates the public for actual and anticipated costs of remedial and response measures; and the relative strength of the parties' litigating positions." *United States v. Fort James Operating Co.*, 313 F. Supp. 2d 902, 910 (E.D. Wis. 2004) (citing *United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 89 (1st Cir. 1990)). However, this information is not in Plaintiff's motion and prevents the Court from making a meaningful decision. Approving the settlement agreement when so little is known how it will affect any litigation would be like approving the purchase of a pig in a poke. Moreover, the agreement is flawed as it would protect other entities not a party to the agreement and have not resolved their liability regarding the non-consent decree costs, contrary to the purposes of a contribution bar. In summary, even setting

jurisdictional issues aside, Plaintiff has failed to show that barring contribution claims meets CERCLA requirements.

**(D)  Conclusion**

For these reasons, the Court DENIES Plaintiff's motion to bar contribution claims (DE 325). As noted in the Court's July 3, 2023, Order (DE 339), the resolution of this motion ends this case, so the Court DIRECTS the Clerk to close it.

SO ORDERED.

ENTERED: June 3, 2024

                                                    /s/ JON E. DEGUILIO
                                                    Judge
                                                    United States District Court